JOSEPH E. WILSON JR.,
16510 Centerfield Drive, Apt. D-1
Eagle River, Alaska 99577
Telephone (907) 696-2223



RECEIVED
FEB 12 2007
CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

IN THE UNITED STATES DISTRICT COURT FOR THE

DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| In re: | ) |
| UNITED STATES OF AMERICA | ) |
| Plaintiff. | ) |
| vs. | ) |
| JOSEPH E. WILSON, JR., | ) |
| Defendant | ) CaseNO.3:99-CR-00096-RRB |

### ANSWER OF DEFENDANT JOSEPH E. WILSON JR.

Joseph E. Wilson, Jr., a defendant in the case referenced above submits this answer to the complaint filed in this case.

1.    The Plaintiff states Co-Defendant Sara Wilson, was arrested and arraigned in April 1999 in the District of Alaska. However the court records show Sara came up to Alaska from Washington to sign her Plea Agreement on 4/22/99, the Defendant Joseph E. Wilson Jr., is aware of the date because Sara Wilson had been remarried since August 1998 living in Washington State and had ask me if she could stay at my house and visit the kids while she came up to sign her plea agreement. It was on the morning of April 22, 1999 she borrowed my car to drive into the federal building to meet with assistant US attorney Crandon Randell and sign a plea agreement, she returned that evening I am not aware she was arrested during the 6 hours she was gone.

2.    The Plaintiff states '" In May 2000 approximately 22,500.00 that had been seized in conjunction with the arrest of Sara Wilson was paid to the restitution victim, Hartford Insurance Company, and credited as a payment towards satisfaction of Ms. Wilson's restitution judgment". However, United States Secret Service Special Agent Michael K. Fithen writes in his report dated 9/5/97, that on 6/24/1997 he and agent Frank Powers contacted Sara Wilson at 17313 Meadow Creek Road in Eagle River

ANSWER OF DEFENDANT JOSEPH E. WILSON JR.
Case No. 3:99-cr-00096-RRB                                                                                         Page 1

and ask her to accompany them to the Anchorage Police Department Eagle River substation, Agent Fithen writer's he told her she was not under arrest, nor did she have to go with them. Wilson agreed to go and was interviewed in an open room, and again reminded she was not under arrest and was free to leave at any time. Present at the interview was Agent Fithen, Agent Powers and Sandra Porter a close friend of Sara Wilson's. During the interview Sandra Porter called Mr. Wilson to come to the substation, Mr. Wilson spoke to Sara and then drove her and Sandra Porter to Sara's place she was staying at on Meadow Creek Drive, agents Fithen and Powers followed in their car. Mr. Wilson waited in his car while Sara took agents Fithen and Powers and Sandra Ported downstairs, to a bedroom she was staying at, handed a thick manila envelope to Agent Fithen, he counted out $17,000 placed it back in the envelope and initialed and dated the package. Sara Wilson was given a handwritten receipt for the currency and departed with Mr. Wilson. Agents Fithen and Powers took Sandra Ported to National Bank of Alaska at Eagle River were she executed SSF 1922 " consent to search." Agent Fithen accompanied Sandra Ported into the branch where she accessed her safety deposit box #1112, she took out envelope that she had placed in the box on 5/08/1997 and give it to Agent Fithen. The envelope was opened and counted, which totaled $5,550.00. Agent Fithen took custody of the currency, the currency received from Sara Wilson and Sandra Porter was inventoried and placed in evidence per USSS policy. The total amount of $22,550.00 inventoried on SSF 1544 #161751 dated 6/24/97 was taken to impound in the Anchorage RA. The Agent also wrote that Sandra Porter, Loss prevention manager of Carr's Pete Johnson and a friend of Sandra Porter's Clint Walker on 5/8/97 entered Sara Wilson's apartment and removed $5.550.00 from a safe Sara had in the apartment. Pete Johnson was reluctant to accept the cash from Sandra Porter, they mutually agreed to go to NBA and open a new safe deposit box, placing the money in an envelope which she and Johnson signed and placed in the new box.

     3.     The Plaintiff not only did not give a correct accounting, as it was $22,550.00 not 22,500.00 , Plaintiff did not indicate any dates of motions filed for a forfeiture hearing or that the money was part of a seizure order. It is Defendants' understanding from 21 years working in the collection division of the Internal Revenue Service, any U.S. Currency taken that there is not a clear knowledge who the owner is, the currency must be held till and notice given so anyone who might have a claim to the money can file a motion for the currency. The many years Defendant work in Florida, it was not uncommon for local law enforcement to find large amounts of cash in cars, boats and planes, that ownership was not known. The policy was not to assume who was the owner. Defendant has no knowledge of being noticed of a hearing to allow him to show evidence that the money applied to Sara's restitution was from her stealing, or was it a mixture of legal money and money from her illegal activities ? Or was all of it legal money from joint accounts , wages and 8 Alaska permanent funds ?

**ANSWER OF DEFENDANT JOSEPH E. WILSON JR.**
Case No. 3:99-cr-00096-RRB                                                            Page 2

    4.    The Plaintiff states Defendant has not received any credit towards reduction of his judgment debt for payments that Sara Wilson has made towards her judgment debt and Mr. Wilson would not receive credit for payments Sara Wilson makes until such time as her balance is reduced to $38,000.00 which is the amount of Mr. Wilson's restitution judgment.

    a. Defendants' judgment states that the $38,000.00 is joint and several, it does not state how payments are to be applied.

    b. Any payments Defendant makes goes towards Sara Wilson's restitution, Defendants judgment does not state that Sara Wilson's payments can not be applied to Defendants restitution till her balance is down to $38,000.00

    c. Sara Wilson's Plea Agreement does not state how the $22,550.00 is to be applied, nor even mentions the $17,000.00 turned over to the U.S. Secret Service by her or the $5,550 given to them by a third party Sandra Porter.

    d. The silence of the court judgment against Defendant and Co-Defendant Sara Wilson's Plea Agreement ,as how payments can be applied does not allow for the Plaintiff to assume they can apply as they want.

    e. The $22,550.00 is tenancy by the entirety and Defendant should have it applied towards his restitution see **Pacific Reporter 2d series 714 page 354  Faulk v Haskin . The Superior Court Third Judicial District Anchorage Alaska, Honorable Ralph E. Moody Jr . held " that property was held in tenancy by the entirety" .  Supreme Court of Alaska 2-14-1986, Supreme Court Judge, Honorable Matthews J . held that  " ( 1 ) personal property which husband and wife jointly possessed and used was presumptively held in tenancy by the entirety"  AFFIRMED**

    d. At the time of Sara's interview with Secret Service on 6/24/1997 she was not arrested and she did have jointly held property of the marriage with the Defendant. The divorce was not final till July 18, 1998.

    5.    The Defendant filed Bankruptcy 06/13/200 and Order Confirming Chapter 13 plan was approved on 05/31/2001 and was signed off by James Barkeley, Asst. U.S. Attorney for USA.    **Title 11 Chapter 13 > subchapter II > § 1327. Effect of confirmation** :

    **(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.**

    **(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.**

**ANSWER OF DEFENDANT JOSEPH E. WILSON JR.**
Case No. 3:99-cr-00096-RRB     Page 3

    **(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.**

  6. All of the Defendants personal and real property was Defendants to dispose of as he wished while he was under the bankruptcy stay with a confirmed plan. Defendants' Chapter 13 plan was completed and the final discharge was issued 04/17/2006. The Plaintiff acknowledged their understanding of this, when Plaintiff was contacted in 2005 and advised that they had violated the bankruptcy stay when they filed their lien for fine and restitution 10/13/2000, and they withdrew their lien on 11/22/2005.

  7. The Defendants' restitution is not dischargeable, and was not discharge on 04/17/2006, however, defendants' house was sold 02/09/2006 and Land Title Company is wrongfully holding the funds from the sale, which is a cause of action in a pending civil case # 3:06:CV 231 RRB. This garnishment action by the Plaintiff is attempting to attach to funds that the Plaintiff had no garnishment action against on 02/09/2006. The Plaintiff held no special rights under the bankruptcy code to attempt to take enforcement action to collect this debt . Any action in attempting collection of this debt, prior to the Bankruptcy discharge date of 04/17/2006 would be a violation of the bankruptcy stay. The Bankruptcy Code provides relief for the creditors and debtors in handling any disputes, it appears that the Plaintiff might be taken a strategy, to have Land Title withhold disbursing the funds of the defendants' home on 02/09/2006 to allow for the bankruptcy to be closed on 04/17/2006 so at that time Plaintiff could take action against the proceeds from the sale of the home with this motion for Garnishment. If this is found to be true from evidence in the related civil case, the bankruptcy stay violation will carry into this criminal case. As stated ( In re Pinstaff, 974 F. 2d 113, 115 (9th Cir. 1992, citing Goich v. Bloom ( In re Bloom), 875 F. 2d 224, 227 (9th Cir. 1989).

*A "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was "willful" or whether compensation must be awarded.*

The plaintiff was aware of Defendants' bankruptcy in that Asst. U.S. Attorney James Barkeley signed off approving the Defendants Bankruptcy plan 05/31/2001, and Plaintiff on 11/22/2005 withdrew their lien for restitution they had filed on 10/13/2000.

**ANSWER OF DEFENDANT JOSEPH E. WILSON JR.**
Case No. 3:99-cr-00096-RRB    Page 4

  8. The defendant is not aware of any actions taken by the Plaintiff, in any proceedings criminal or civil against seized or forfeited property of the Defendant or Co-Defendant. The Defendant is aware that on 06/24/97 when Agents Fithen and Powers interviewed Sara Wilson she was not issued a seizure order or search warrant for the $17,000.00 she gave to the agents, nor is defendant aware that Sandra Porter had been issued a seizure order for the $5,550.00 she gave to the agents.

WHEREFORE, it is prayed that the Court:

  1. Deny the relief requested in the Complaint

  2. Order the $22,550.00 applied to Co-Defendants' restitution to be applied to Defendants restitution as of the date shown on Defendants' judgment. and make adjustments to interest from that date.

  3. Prohibit the Plaintiff or any Government agency or Debtor from taking any action against the sale proceeds or allow Defendant time to file a motion to have Defendants Chapter 13 case be reopened for the Bankruptcy Court to settle issues relating to violations of the Bankruptcy stay and issues relating to any debtor claims against the sale proceeds as of 02/09/2006 the date of the sale.

  4. Grant such other and further relief as is just and proper.

DATED: 2/12/2007

*[signature]*
JOSEPH E. WILSON JR.

**CERTIFICATE OF SERVICE**

On February 12, 2007, a copy of the foregoing
was transmitted by first-class mail to:

NELSON P. COHEN
United States Attorney

RICHARD L. POMEROY
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 W. Seventh Avenue #9, RM. 253
Anchorage, Alaska 99513-7565